**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**TCT FEDERAL CREDIT UNION,**

                **Plaintiff,**

           v.                                      **1:10-CV-150**
                                                            **(FJS/DRH)**

**CUMIS INSURANCE SOCIETY, INC.,**
**WILLIAM R. PERRY, MARIANNE L. PERRY,**
**JOSHUA L. ROGERS, JOSEPH O'MALLEY,**
**KATHRYN M. O'MALLEY, R. PATRICK**
**MCCLENITHAN, PEGGY MCCLENITHAN,**
**MATTHEW I. BEANE, KRISTEN**
**KOLAKOWSKI, NICOLE A. BATEASE,**
**WILLIAM L. THOMAS and JOAN E. THOMAS,**

                **Defendants.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **DEROHANNESIAN & DEROHANNESIAN**<br>677 Broadway, Suite 202<br>Albany, New York 12207<br>Attorneys for Plaintiff | **PAUL DEROHANNESIAN II, ESQ.** |
| **OFFICE OF RUDOLPH J. MEOLA**<br>950 New Loudon Road<br>Latham, New York 12110<br>Attorneys for Plaintiff | **RUDOLPH J. MEOLA, ESQ.** |
| **SEDGWICK, DETERT, MORAN & ARNOLD, LLP**<br>125 Broad Street, 39th Floor<br>New York, New York 10004-2400<br>Attorneys for Defendant Cumis Insurance Society, Inc. | **ARTHUR H. AIZLEY, ESQ.**<br>**JOHN T. SEYBERT, ESQ.** |

**OFFICE OF MATTHEW J. TURNER**  **MATTHEW J. TURNER, ESQ.**
54 Second Street
Troy, New York 12180
Attorneys for Defendants William R.
Perry, Marianne L. Perry, Joshua L.
Rogers, Joseph O'Malley, Kathryn
M. O'Malley, R. Patrick McClenithan,
Peggy McClenithan, Matthew I. Beane,
and Kristen Kolakowski

**CAROLA, BAGNOLI &**  **KEVIN J. TOLLISEN, ESQ.**
**TOLLISEN, P.C.**
215 Park Avenue
Mechanicville, New York 12118
Attorneys for Defendants William L.
Thomas and Joan E. Thomas

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 22, 2010, the Court heard oral argument in support of, and in opposition to, Defendant Cumis Insurance Society Inc.'s ("Defendant Cumis") motion to dismiss or stay this action on abstention grounds based on the "First-to-File" rule and Plaintiff's motion to remand this case to New York Supreme Court, Saratoga County, on the ground that the requisite "complete diversity" between Plaintiff and Defendants was lacking and that, therefore, this Court lacked subject matter jurisdiction over this action under 28 U.S.C. § 1332(a).[1]

At the conclusion of oral argument, the Court reserved decision, concluding that it required additional information before it could determine whether Plaintiff was a national citizen

---

[1] Alternatively, Plaintiff argued that Defendant's removal of ths action was defective.

for purposes of diversity jurisdiction.[2] On April 27, 2010, the Court issued an Order in which it instructed Plaintiff to respond to six questions and to provide any other information relevant to the determination of whether Plaintiff was a national citizen for purposes of diversity jurisdiction. *See* Dkt. No. 31 at 1-2. The Court also provided Defendant Cumis with an opportunity to respond to Plaintiff's submission. *See id.* at 2. Both parties have filed their submissions, and Plaintiff's motion to remand is now ripe for review.

## II. BACKGROUND

Since 1959 Plaintiff has been a federally chartered credit union with its principal place of business in Saratoga County, New York. Between 2000 and 2009, Plaintiff contracted the servicing aspects of its first mortgage loans to CU National, which was located in New Jersey.

In early 2009, Plaintiff discovered that CU National had fraudulently and illegally sold a number of Plaintiff's loans, without Plaintiff's authority, and had diverted the proceeds to benefit CU National's principal, Michael McGrath. The mortgage loans that the individual Defendants owed to Plaintiff were some of the loans that CU National sold without Plaintiff's authority.

Plaintiff filed a proof of loss under its bond with Defendant Cumis. Defendant Cumis denied coverage on the ground that the insurance provided in that bond did not cover the types of losses that Plaintiff had suffered as a result of CU National's actions.

On or about December 16, 2009, Plaintiff filed this action in New York Supreme Court, Saratoga County, and, on or about December 31, 2009, filed a supplemental summons and

---

[2] Subsequent to oral argument, Defendant Cumis moved to withdraw its motion to dismiss or stay this action on abstention grounds. *See* Dkt. No. 39. On December 10, 2010, the Court issued an Order granting that motion. *See* Dkt. No. 40.

amended complaint. The individual Defendants, all New York residents, timely answered the complaint. Rather than answer the state-court complaint, Defendant Cumis removed the action to this Court on February 8, 2010. *See* Dkt. No. 1.

### III. DISCUSSION

**A.     Plaintiff's citizenship for purposes of diversity jurisdiction**

In its Notice of Removal, Defendant Cumis stated that "[t]his action is properly removable from state to federal court because [Defendant] Cumis is the only properly joined and served Defendant, there is complete diversity of citizenship between [Defendant] Cumis and [Plaintiff], and the amount in controversy exceeds $75,000." *See* Notice of Removal at ¶ 6 (citing 28 U.S.C. §§ 1332, 1441(a)). Defendant Cumis further asserted that Plaintiff "is alleged to be a credit union resident in the [sic] New York State with offices at 416 Rowland Street, Ballston, Spa, New York, and is thus a citizen of New York for purposes of 28 U.S.C. § 1332(a)(1)." *See id.* at ¶ 29 (citation omitted). The parties do not dispute that the amount in controversy exceeds $75,000 nor do they dispute Defendant Cumis' citizenship. Thus, the only question before the Court is whether Plaintiff is a citizen of New York or a "national" citizen for purposes of diversity jurisdiction.

As the party that removed this case, Defendant Cumis bears the burden to show that removal was proper, that is, that this Court has subject matter jurisdiction over this matter. *See Auriemma Consulting Group, Inc. v. Universal Sav. Bank, F.A.*, 367 F. Supp. 2d 311, 312 (E.D.N.Y. 2005) (citations omitted). "Federalism and the limited jurisdiction of federal courts require that . . . all doubts be resolved in favor of remand." *Id.* at 313 (citations omitted).

-4-

As noted, Plaintiff was chartered as a Federal Credit Union in 1959 and has continued as such until the present time. *See* Declaration of Curt Cecala dated March 2, 2010, at ¶ 2. "The general rule with respect to such institutions is that . . . [they are] not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship." *Auriemma Consulting Group*, 367 F. Supp. 2d at 313 (citations omitted). There is, however, a limited exception to this rule, which exists "if the corporation's activities are 'localized' within a single state." *Id.* (citation omitted). If that is the case, the corporation will be considered a citizen of that state. *See id.* Conversely, "where a federally chartered institution does business in several states, it will be deemed to have only national citizenship." *Id.* (citation omitted).

To determine whether the "localization" exception applies, courts look at a number of factors, including "the corporation's principle [sic] place of business, the location of branch offices, the volume of business transacted in different states and 'any other evidence that tends to show the local or national nature of the corporation's plans and operations.'" *Id.* (quotation and other citations omitted). In *Auriemma Consulting Group*, after considering these factors, the court concluded that the localization exception did not apply because, although the bank's principal office was in Wisconsin, all funds from deposits were ultimately deposited in Wisconsin, and its Wisconsin office funded all its loans, the bank's website stated that it maintained administrative offices in California and Arizona, in addition to those located in Wisconsin and Michigan, it solicited business throughout the country through its website, mortgages and credit card applications could be processed on line, and the majority of its credit card customers (54.4%) was located outside of Wisconsin with only 2.5% of those customers located in Wisconsin. *Id.* at 314.

Based on this information, the court concluded that the defendant's

> website makes perfectly clear that the bank intends to exercise the full powers granted by its charter and to do business on a nationwide basis. There is . . . nothing wrong with this. It does, however, support a finding that [the defendant's] business is not so localized as to make it a citizen only of the State of Wisconsin and leads to the legal conclusion that for purposes of the diversity statute, [the defendant] is to be considered only a national citizen.

*Id.*

Therefore, the court concluded that, in light of the fact that the defendant had the burden to prove localization and that the court must resolve all doubts in favor of remand, it had "little difficulty holding that [the defendant] [was] a national citizen only and therefore [could not] invoke this court's diversity jurisdiction." *Id.*; *see also Iceland Seafood Corp. v. Nat'l Consumer Coop. Bank*, 285 F. Supp. 2d 719, 725-26 (E.D. Va. 2003) (holding that localization was not established where the defendant bank's charter "authorize[d] nationwide activities," that the bank made loans to entities in at least five states, and that these activities were "clearly national in scope, and [the bank's] secured collateral [was] similarly disbursed"). *But see Waldron Midway Enters., Inc. v. Coast Fed. Bank*, No. CV-91-1750, 1992 WL 81724, *2 (E.D.N.Y. Apr. 10, 1992) (concluding that the localization exception applied where the defendant bank maintained no out-of-state branch offices, originated most of its loans on single family in-state residences, targeted its business activities to a single state and out-of-state loans accounted for less than five percent of the bank's business (citations omitted)); *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (applying the same factors and holding that the localization exception applied where thirty of the plaintiff bank's thirty one branches were located in one state and two-thirds of the bank's residential mortgages and the loans it serviced were secured by in-state

properties)

In the present case, although neither party submitted Plaintiff's charter, there is no dispute that the charter does not limit Plaintiff's activities to the State of New York. Nor does the Federal Credit Union Act, under which Plaintiff is chartered, contain any such limitation. In support of its position that it is a national citizen for purposes of diversity jurisdiction, Plaintiff asserts the following facts:

> (1) It "provides a wide array of financial services to its members including on-line loan application, payroll deduction, direct deposit, on-line bill paying, on-line banking, auto response banking and ATM access throughout the United States." *See* Cecala Decl. at ¶ 3.
>
> (2) Its "loan products include boat and RV, education, mortgage, home equity, Visa Platinum and personal loans," *see id.*
>
> (3) It "has conducted and continues to conduct activities in numerous states throughout the country." For instance, [its] cash deposits (in excess of 14 million) are currently located in Warrenville, Illinois at Members United Corporate Federal Credit Union." *See id.* at ¶ 4.
>
> (4) It "maintains a business loan partnership in Portland, Oregon with CU Business Group." *See id.* at ¶ 5.
>
> (5) It "has a fully funded commercial loan customer in San Diego, California (for approximately $675,000.00) and a pending loan in Beaumont, Texas (for approximately $750,000.00). Similar investments in commercial properties are planned for the future without limitation by state." *See id.* at ¶ 6.
>
> (6) It "maintains significant business activity with numerous service providers throughout the country. One of [its] most important contracts, its contract for ATM services and Visa debit card services, is with Fiserv of San Francisco, California. This business partnership gives [Plaintiff] a national reach as it allows [its] members to access their funds from ATM machines throughout the country." *See id.* at ¶ 7.

>(7) "[F]rom 2000 to 2009, [it] conducted its first mortgage operation in New Jersey through its servicing arrangement with CU National. The volume of first mortgage business handled in New Jersey was extremely significant to [Plaintiff]. In December 2008 [Plaintiff] had over 7 million in mortgages being serviced in New Jersey which constituted about 70% of [Plaintiff's] mortgage volume and about 11% of [Plaintiff's] entire loan volume." *See id.* at ¶ 8.
>
>(8) Its "presence in New Jersey was open and public[;] . . . [mortgage payments were sent to Plaintiff at an address] in New Jersey. [Plaintiff] also sold some mortgages in New Jersey through CU National's contacts on the secondary market. In 2008, 1.4 million of loans were sold in New Jersey." *See id.* at ¶ 9.
>
>(9) It "now offers numerous remote services including credit card and debit card services, on-line banking, on-line bill paying, on-line loan application, direct deposit and payroll deduction. [Plaintiff] provides all of its financial services to members without regard to where the members live. . . . [Plaintiff's] automated and on-line systems allow [Plaintiff] to provide member services remotely in whatever state location the members happen to be." *See id.* at ¶ 10.
>
>(10) It "currently has over 11,700 members and these members live in 33 different states including Florida, Vermont, Arizona, Georgia, California, New York, Texas, Virginia, Massachusetts, South Carolina, North Carolina and Alaska. [Plaintiff] provides information and marketing on its financial products and services to its members in all of these states." *See id.* at ¶ 11.
>
>(11) Its "non-New York members have approximately $2,015,715.10 in checking and saving accounts with [Plaintiff]. Loans with non-New York members approximate $1,183,294.50." *See id.*

To counter these assertions, Defendant Cumis argues that the localization exception applies to Plaintiff because Plaintiff "is headquartered in Ballston Spa, New York and 'has four small branches in New York and zero outside of New York,'" and Plaintiff "has a very limited membership. In order to join [Plaintiff] an individual must be an employee of a school district

within Warren, Washington, Saratoga and Hamilton Counties [of New York] (or a relative of a member)." *See* Defendant Cumis' Memorandum of Law at 10-11.

After reviewing this information as well as hearing the parties' oral arguments, the Court concluded that it did not have sufficient information to determine whether the localization exception applied to Plaintiff. Therefore, the Court ordered Plaintiff to answer the following six questions: (1) "How many of Plaintiff's mortgage loans that were serviced in New Jersey were secured by properties located outside the State of New York?"; (2) What is the specific nature of Plaintiff's business loan partnership in Portland, Oregon?"; (3) What percentage of Plaintiff's total commercial loan portfolio is comprised of loans to entities outside the State of New York?"; (4) How many of Plaintiff's 11,700+ members are located outside the State of New York?"; (5) "What percentage . . . of Plaintiff's total assets in checking and savings accounts [is the approximately $2,015,175.10 in checking and savings accounts with Plaintiff that are held by non-New York members]?"; and (6) "What percentage . . . of Plaintiff's total loan portfolio is [the approximately $1,1183,294.50 in loans that Plaintiff has with non-New York members]?".

In response to these questions, Plaintiff provided the following answers:

> (1) Plaintiff "currently [has] mortgages recorded in Vermont, Virginia, New Jersey, Florida, the District of Columbia and Alaska. The total number of these mortgages is 13 aggregating $602,574.26. [Plaintiff] estimate[s] that the volume of mortgages recorded outside of New York has not changed drastically in the last nine years so the current number of these mortgages, which is 13, reflects the general volume of mortgages recorded in states other than New York over the past nine years." *See* Declaration of Curt Cecala ("Cecala Decl. II") dated April 30, 2010, at ¶ 9.
>
> (2) "Since the inception of [Plaintiff's] commercial loan program in 2009 [Plaintiff has] looked at four loans. . . . To date, 100% of [Plaintiff's] commercial loan activity has been outside of New

York State. . . . [Plaintiff] is able to make these loans through [its] business partnership with CU Business Group in Portland, Oregon. CU Business Group performs various functions for [Plaintiff] including, acting as a broker in locating loan prospects, performing the underwriting analysis for potential loans and acting as a participant servicer for the loans. . . ." *See* Cecala Decl. II at ¶ 7.

(3) "To date, 100% of [Plaintiff's] commerical loan activity has been outside of New York State. [Plaintiff] would certainly consider making New York commercial loans but so far the best opportunities have been in other states. . . . While [Plaintiff has] not made a large number of commercial loans the size of the loans considered is significant to [Plaintiff] and [Plaintiff has] to expand carefully. [Plaintiff's] plan is to add more commercial loans in whatever states present the best opportunity for [Plaintiff]." *See id.*

(4) Plaintiff has "463 members outside of New York which is approximately 4% of the total membership." *See id.* at ¶ 4.

(5) Plaintiff's 463 members who reside outside New York State "have basic savings accounts totaling $167,522.11. Leaders in number of accounts are Vermont members with 119, Florida members with 86 and Massachusetts members with 30. The rest of the savings accounts are for members spread over 39 other states, Canada and Germany and total $497,372.77." *See id.*

(6) Plaintiff has "153 loans with members in 29 states outside of New York totaling approximately $1,508,292.43. This figure includes some loans that [Plaintiff] did not have information on when [this answer] was prepared. Vermont members carry the largest number of loans with 69. Florida members are second with 43 and North Carolina members are third with 16. In terms of total balances per state, Vermont members hold the highest balance with $554,082.33 followed by the Florida members with $205,820.47, Arkansas members with $130,538.19, Pennsylvania members with $71,763.79 and California members with $63,287.48. These out of state loans are a mixture of auto, personal and home loans. [Plaintiff's] out of state loan balances constitute 2.2% of [Plaintiff's] total of $69,130,607.00 member loans." *See id.*

As Defendant correctly notes, the additional information that Plaintiff provided demonstrates that less than 1% of Plaintiff's total of $69,130,667.000 in mortgage loans to its

members are secured by properties located outside of New York State, *see* Defendant Cumis' May 14, 2010 letter at ¶ 1; Plaintiff only has two commercial loans and those commercial loans are approximately 2% of the size of Plaintiff's non-commercial lending practice, of which 99% is secured by properties located in New York State, *see id.* at ¶ 3; only 4% of Plaintiff's total membership lives outside New York State, *see id.* at ¶ 4; New York residents hold 97.1% of Plaintiff's total member deposits, *see id.* at ¶ 5; and 97.8% of Plaintiff's loans were made to New York residents, *see id.* at ¶ 6.

Even when the Court draws all reasonable inferences in favor of remand, the evidence in the record demonstrates that, although Plaintiff may conduct a small portion of its business outside New York State, the overwhelming amount of its business, as well as the overwhelming number of its members, is located in New York. Therefore, the Court finds that Defendant Cumis has met its burden to show that the localization exception applies to Plaintiff and that, therefore, for purposes of diversity jurisdiction, Plaintiff is a citizen of the State of New York.

This conclusion, however, does not end the Court's inquiry regarding the issue of whether it has subject matter jurisdiction over this case. The Court must next determine whether, as Defendant Cumis argues, Plaintiff sued the individual Defendants, all of whom, like Plaintiff, are residents of New York, for the sole purpose of defeating this Court's diversity jurisdiction.

**B.     Fraudulent joinder**

Under 28 U.S.C. § 1332, diversity jurisdiction "does not exist without 'complete diversity,' which means that no defendant can be [a resident of] the same state as any plaintiff." *Campisi v. Swissport Cargo Servs., LP,* No. 09-CV-1507, *2 (E.D.N.Y. Jan. 26, 2010) (citation

omitted). "'[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy.'" *Id.* (quoting *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)). Furthermore,

> "[i]n order to show that naming a non-diverse defendant is a 'fraudulent' joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court."

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir. 2001) (quotation omitted).

A court will consider the joinder fraudulent "'when it is established "that there can be no recovery [against the defendant] under the law of the state on the cause alleged."'" *Id.* (quoting *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984)). Finally,

> [i]n order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against that defendant . . . "[I]n general there need be only a possibility that a right to relief exists under the governing law to avoid a finding of fraudulent joinder. . . ."

*Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 182-83 (S.D.N.Y. 2003) (internal quotation and citation omitted).

When determining whether joinder was fraudulent, the court must resolve "[a]ll uncertainties in applicable state law . . . in favor of the plaintiff" and, in doing so, must subject the complaint to "'less searching scrutiny than on a motion to dismiss for failure to state a claim.'" *Campisi*, 2010 WL 375878, at *2 (quotation omitted). Furthermore, the court need not limit its review to "the bare bones of the Complaint; it 'has discretion to [look outside the pleadings] when determining whether it has subject matter jurisdiction.'" *Id.* (quotation omitted).

Plaintiff's amended complaint contains fifteen causes of action against Defendant Cumis. In addition, it contains one cause of action against Defendants William R. Perry and Marianne L. Perry, one cause of action against Defendant Joshua L. Rogers, one cause of action against Defendants Joseph R. O'Malley and Kathryn M. O'Malley, one cause of action against Defendants R. Patrick McLenithan and Peggy M. McLenithan, one cause of action against Defendants Matthew I. Beane and Kristen Kolakowski, one cause of action against Defendants William L. Thomas and Joan E. Thomas, and one cause of action against Defendant Nicole A. Batease. *See, generally,* Amended Complaint.

The causes of action against the individual Defendants are substantially the same. By way of example, Plaintiff's cause of action against Defendants William R. Perry and Marianne L. Perry states as follows:

> 65. Defendant Cumis, by refusing to honor the policy of insurance available to cover [Plaintiff's] losses resulting from the fraud of CU National, has left the individual homeowner/mortgagors responsible for that loss.
>
> 66. The note and mortgage signed by William R. Perry and Marianne L. Perry in favor of [Plaintiff] on October 27, 2007 relating to their property at 19 Clotherman Drive, Lake George, NY 12845 requires payment to [Plaintiff] of monthly payments of $935.81 from 12-1-07 through 11-1-37.
>
> 67. [Plaintiff] has not received such payments for the months of January, 2009 through December, 2009 inclusive to [Plaintiff's] direct and immediate loss.
>
> 68. Additionally, paragraph 9 of the mortgage granted to [Plaintiff] allows [Plaintiff] to recover all sums paid to eliminate any lien or claim that may be superior to [Plaintiff's] rights herein, including reasonable attorney's fees.
>
> 69. [Plaintiff] has incurred liability for costs to preserve its

>mortgage rights and will incur further costs to the extent [Defendant] CUMIS refuses to honor its obligations herein.

*See* Amended Complaint at ¶¶ 65-69.

In terms of relief against these individual Defendants, Plaintiff seeks judgment "for all monetary losses [it has] suffered . . . which are not compensated by defendant CUMIS, including but not limited to the missed mortgage payments and the actual costs incurred to protect [Plaintiff's] interests herein." *See id.* at WHEREFORE Clause.

All of the individual Defendants filed verified answers to Plaintiff's amended complaint. Defendants William L. Thomas and Joan E. Thomas's answer, in addition to admitting or denying the allegations in the amended complaint, included, as an affirmative defense that "[t]he complaint fails to state a cause of action upon which relief may be granted." *See* Cecala Decl. at Exhibit "12." The answer of the remaining individual Defendants likewise admits or denies the allegations in the amended complaint but asserts no affirmative defenses. *See id.* at Exhibit "13." None of the individual Defendants asserted any counterclaims or cross-claims in their answers.

Although Defendant Cumis states that there is no allegation in Plaintiff's amended complaint that the individual Defendants violated the terms of their mortgages, that is not precisely true because Plaintiff does allege that the individual Defendants were required to make certainly monthly payments to Plaintiff and that Plaintiff did not receive those payments from January 2009 through December 2009. Thus, this argument cannot form the basis for a finding of fraudulent joinder.

Defendant Cumis' argument based on the theory of apparent authority fares no better. "To adequately plead the existence of apparent authority, a plaintiff must allege 'words or

-14-

conduct *of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction on behalf of the principal.'" *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 90 (S.D.N.Y. 2010) (quotation omitted). "Where a third party has reasonably relied on the principal's words or conduct to that effect, the appearance of authority binds the principal." *Id.* (citation omitted). "Thus, to recover on a theory of apparent authority, a party must sufficiently plead two elements: '(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question, and (2) the third party reasonably relied on the representation of the agent.'" *Id.* (quotation omitted). In other words, "[t]he core principle that underlies the theory of apparent authority is that a third party must have relied on 'the misrepresentations of the agent because of *some misleading conduct on the part of the principal* – not the agent.'" *Id.* (quotation and other citation omitted).

    Setting aside for the moment whether Defendant Cumis even has standing to assert a claim of apparent authority, the problem with Defendant Cumis' argument is that none of the individual Defendants, who would have standing to assert such a claim, have done so.[3] In their verified answers, all that the individual Defendants did was to deny knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff had not received their mortgage payments. Absent such counterclaims on the part of the individual Defendants, Defendant Cumis cannot establish that Plaintiff will be unable to recover against the individual Defendants under state law. Furthermore, whether Plaintiff will ultimately prevail on its claims against the individual Defendants is not relevant to this motion for remand; many things could

---

[3] The Court also notes that, although the individual Defendants filed papers in opposition to Defendant Cumis' motion to dismiss or stay this action, *see* Dkt. Nos. 25, 28, they did not file any papers in opposition to Plaintiff's motion to remand.

happen during the course of this litigation; and, even if the individual Defendants successfully moved to amend their answers to allege a counterclaim based on the theory of apparent authority, they would still have to prove all the elements of such a counterclaim to defeat Plaintiff's claims against them.

Based on the current record, the Court finds that Defendant Cumis has not shown, by clear and convincing evidence, that Plaintiff could not recover on its claims against the individual Defendants. Although Defendant Cumis raises the possibility that the individual Defendants might be able to defeat such a claim, such an argument is more "properly resolved on a motion to dismiss, not on a motion for remand." *Stan Winston Creatures*, 314 F. Supp. 2d at 182. In other words, "[a] 'defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case.'" *Id.* (quoting 14B Wright, Miller & Cooper, § 3712 at 331). That is exactly what Defendant Cumis is attempting to do in this case.

Therefore, the Court finds that Defendant Cumis has not met its burden to show that Plaintiff fraudulently joined the individual Defendants, whose presence in this case defeats the complete diversity requirement of 28 U.S.C. § 1332. Accordingly, the Court concludes that it lacks subject matter jurisdiction over this case.

### IV. CONCLUSION

Having carefully reviewed the entire record in this matter, the parties' submissions and oral arguments, and the relevant law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to remand this case to New York State Supreme Court,

Saratoga County, is **GRANTED**;[4] and the Court further

    **ORDERS** that the Clerk of the Court shall mail a certified copy of this Memorandum-Decision and Order to the Clerk of New York State Supreme Court, Saratoga County, pursuant to 28 U.S.C. § 1147(c); and the Court further

    **ORDERS** that the Clerk of the Court shall close this case.

**IT IS SO ORDERED.**

Dated: March 2, 2011
       Syracuse, New York

                                          Frederick J. Scullin, Jr.
                                          Senior United States District Court Judge

---

[4] The Court recognizes that, when granting a motion to remand a case to state court, it may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Under the circumstances of this case, it declines to do so.